UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK D. BEAVERS,<br><br>                    Petitioner,<br><br>vs.<br><br>STEVE LITTLE,<br><br>                    Respondent. | Case No. 1:16-cv-00026-DCN<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court in Mark D. Beavers' habeas corpus matter are several motions ripe for adjudication. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

The Idaho Court of Appeals described the facts of the underlying charges as follows:

> After receiving reports of a strong odor
> of marijuana emanating from Beavers' home, police obtained
> a search warrant. During the search of Beavers' home, police
> discovered forty-five growing marijuana plants, jars

containing marijuana, and literature on
growing marijuana. Police also discovered scales, bags, and
paraphernalia. Beavers was arrested and charged with
trafficking in marijuana and possession of a controlled
substance with the intent to deliver [in one case].

While Beavers was out on bond on those charges, he was
arrested for selling marijuana to an undercover police officer.
Police again obtained a search warrant for his home and
discovered growing marijuana plants, seeds, bags, scales, and
jars containing marijuana. Beavers was charged with
trafficking in marijuana, possession of a controlled substance
with the intent to deliver, and delivery of a controlled
substance in [a second case].

(State's Lodging B-5 at 1-2.)

Petitioner was convicted of both sets of crimes in two separate trials in the First

Judicial District Court in Coeur d'Alene, Idaho. The two sets of crimes were eventually

consolidated for sentencing. This habeas corpus action challenges only the second set of

charges. Attorney Martin Neils, of the Kootenai County Public Defender Office,

represented Petitioner at his first trial; Attorney Staci Anderson represented Petitioner at

his second trial.

In a consolidated direct appeal, all of Petitioner's convictions were affirmed.

(State's Lodging B-5.) However, the sentences arising from the second criminal action

were vacated, because the sentence enhancement was improperly determined. The Idaho

Court of Appeals concluded that the trial court should have ordered a jury trial on the

enhancement after it concluded that Petitioner's admission of prior felony convictions

was involuntary.

Upon remand, a jury found facts necessary for the enhancements. Petitioner was re-sentenced on those counts on December 20, 2011, and a judgment was entered. Petitioner obtained no other relief on appeal of his sentences after remand. (State's Lodging D-4.)

Petitioner filed a post-conviction action asserting one prosecutorial misconduct claim and thirteen ineffective assistance of trial counsel claims. (State's Lodging E-1.) The state district court appointed Attorney J. Lynn Brooks to represent Petitioner. The State filed a motion for summary dismissal, and Petitioner's counsel filed a responsive brief. The Court held a telephonic oral argument hearing on the motion. Petitioner was not present.

Several weeks after the hearing, Petitioner filed a motion for change of counsel, asserting that his counsel was ineffective for several reasons. The state court granted the State's motion for summary dismissal without addressing Petitioner's motion for change of counsel.

Petitioner was represented by Attorney Jason Pintler of the State Appellate Public Defender Office on appeal. The Idaho Court of Appeals affirmed summary dismissal of the post-conviction petition, and the Idaho Supreme Court denied review. (State's Lodging F-4 to F-6.)

It appears that Petitioner has satisfied most of his sentences, except the enhanced trafficking sentence, which extends to 2022.[1] He is currently on parole.

---

[1] *See* https://www.idoc.idaho.gov/content/prisons/offender_search/detail/91682.

Previously in this matter, the Court granted Respondent's Motion for Summary Dismissal to the extent that it concluded the following claims were procedurally defaulted: Claims 4 through 11, and 13 through 16 (ineffective assistance of trial counsel claims); Claims 17 (prosecutorial misconduct), 20 (merits of factual disputes not fully resolved in underlying criminal proceedings) and 21(a) (fact-finding procedure inadequate). Claims 18 through 20 and 21(b) through 24 were dismissed as noncognizable. Dkt. 21. Only Claims 1 and 12 remain for a merits determination.

The Court permitted Petitioner to file a Motion for Application of the *Martinez v. Ryan* exception to excuse the procedural default of his ineffective assistance of trial counsel claims. Dkt. 21. Two extensions of time for submission of the motion were granted. Dkts. 26, 34. The Court will first consider the preliminary motions, and then proceed to the *Martinez v. Ryan* motion.

## PRELIMINARY MOTIONS

Petitioner has filed a Motion to Reconsider Appointment of Counsel, his second such request. Dkt. 35. Having reviewed the request in light of the substance of the record, the Court again declines to appoint counsel.

Petitioner has filed a Motion for Discovery. Dkt. 37. Petitioner asserts that he has never been provided with the full recordings of the conversations between him and the police confidential informant, Cathy Johnson, that occurred on November 20 and 21, 2007, which led to the second set of charges against Petitioner. *See* Dkt. 37-1 at 9; Dkt. 44 at 18; Dkt. 55 at 14. The Court will expand the record with the new recordings

supplied by Petitioner that he received in 2017, but only to the extent that they may be used for procedural default purposes.

However, Petitioner still asserts that the new recording he received is not the full recording. Nothing in the entire record suggests that there is another recording, or that the recording he has was altered. Petitioner's belief, alone, does not support his request.

Good cause for discovery exists when there is "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (internal quotation marks and alteration omitted). To show good cause, a request for discovery must be supported by specific factual allegations. Habeas corpus review "was never meant to be a fishing expedition for habeas petitioners to explore their case in search of its existence." *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (internal quotation marks omitted). If good cause is shown, the extent and scope of discovery is within the court's discretion. *See* Habeas Rule 6(a).

Petitioner has not shown good cause to continue to hunt for an "original" recording. Nor has he provided any inkling as to the content of this "original" recording, or why it would aid his defense, since the evidence at Petitioner's second trial showed that he sold marijuana to a third party. (State's Lodging A-6 at 37-46.) Moreover, the Court has listened carefully to the recording and heard nothing, such as an obvious break in the recording, to indicate that it has been altered or otherwise edited from the alleged "original." Petitioner and Johnson are frequently heard talking over each other, which would make alteration all but impossible. No further discovery is warranted.

Petitioner has also filed a Motion to Expand the Record. Dkt. 45. Most of the documents he has supplied pertain to his medical necessity defense. The Court will grant the motion only to the extent that the new items may be used for procedural default purposes.

Petitioner and Respondent have filed Motions for Extensions of Time as to various document deadlines. Dkts. 36, 47, 48, 51, 52. Good cause appearing, the motions will be granted.

## MOTION FOR APPLICATION OF *MARTINEZ V. RYAN*

### 1.  Standard of Law

There exists a limited exception to the general rule that ineffective assistance of post-conviction counsel cannot constitute cause to excuse a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (setting forth general rule). That exception was established in *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the court held that a circumstance of no counsel or inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9, 17. The *Martinez* Court created the limited exception because "as an equitable matter... the initial-review collateral proceeding, if undertaken without counsel, or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*. at 14.

The *Martinez v. Ryan* exception permits the district court to hear procedurally defaulted claims of ineffective assistance of trial counsel. *Id*. at 16. The exception,

however, has not been extended to other types of claims. *Davila v. Davis*, 137 S.Ct. 2058, 2065 (2017). Neither does *Martinez* apply to attorney ineffectiveness in post-conviction appeals, but only in initial post-conviction actions. *Martinez*, 566 U.S. at 16.

In addition, a petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Martinez*, 566 U.S. at 14. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id.*; *see Strickland v. Washington*, 466 U.S. 668, 695-96 (1984)..[2]

### 2. The Court's Instructions to Petitioner for a *Martinez* Showing

The only subclaims that *Martinez* might apply to are Claims 4 through 11 and 13 through 16.[3] Petitioner alleges in his Response that Ms. Brooks (post-conviction counsel in the initial post-conviction proceeding) is at fault for failing to fully develop the

---

[2] In *Strickland*, the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. 466 U.S. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

Prejudice under these circumstances means there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and would compel denial. *Id.*

[3] *Martinez* applies only to claims of trial counsel ineffectiveness claims; therefore, all other claims are ineligible for this exception.

defaulted ineffective assistance of trial counsel claims. To support his assertion, he must bring forward facts showing that responsibility for the default of the claims resulted from Ms. Brooks'—and not Mr. Pintler's (counsel on post-conviction appeal)—handling of their respective portions of the post-conviction case. Such facts will necessarily focus on the merit of the claims that trial counsel, Ms. Anderson, handled pretrial or trial matters in a way that harmed Petitioner's defense such that there is a reasonable probability of a different outcome at trial.

To support his claim that Brooks was ineffective, Petitioner points to the fact that he asked the state district court to change his counsel because he thought her performance was inadequate, but the court dismissed the claims without ruling on the motion. (State's Lodging E-1 at 205-229.) On appeal, the Idaho Court of Appeals held:

> [I]t was not necessary for the district court to rule on Beavers' motion for change of counsel before ruling on the State's motion for summary dismissal. In *Charboneau v. State*, 140 Idaho 789, 102 P.3d 1108 (2004), the Idaho Supreme Court held that in post-conviction proceedings, district courts must rule on motions for appointed counsel before ruling on motions for summary dismissal, "in order to give the petitioner an opportunity with counsel to properly allege the necessary supporting facts." *Id*. at 793, 102 P.3d at 1112.

> In this case, Beavers had an opportunity with counsel to allege the necessary facts and arguments in his brief in response to the State's motion for summary dismissal and at a hearing on the motion for summary dismissal. Because the court afforded Beavers this opportunity, it was not necessary for the court to rule on Beavers' motion for change of counsel before ruling on the State's motion for summary dismissal. Further, Beavers has not shown his motion for change of

> counsel would have affected the court's ruling on the State's
> motion for summary dismissal. The hearing had been held
> and the motion taken under advisement by the district court
> before Beavers filed his motion for change of counsel.
> Beavers does not show how a change of counsel would have
> affected the court's ruling on the State's motion for summary
> dismissal.

*Beavers v. State*, No. 42327, 2015 WL 7755977, at *4 (Idaho Ct. App. Dec. 2, 2015).

Similarly, here, Petitioner cannot articulate exactly what Brooks did that was deficient or

how it caused him prejudice.

Petitioner has generally alleged that post-conviction counsel Ms. Brooks made an

effort to cover up the misdeeds of trial counsel, Ms. Anderson, and the prosecutor. In his

response to Respondent's Motion for Partial Summary Dismissal, Petitioner alleged that

the state post-conviction court did not hold a full and fair hearing on the post-conviction

petition only because Ms. Brooks never obtained or submitted evidence in support of

Petitioner's claims. Petitioner further alleged that Judge Gaskill was involved in the

conspiracy to cover up the prosecutorial misconduct claim by not allowing a full and fair

hearing on the claim. *See* Petitioner's Response, Dkt. 18. These allegations have not been

substantiated by sufficient facts. Petitioner has not shown that the decision making in the

post-conviction case was not simply the result of another factor such as strategy or legal

judgment.

Petitioner generally alleges that content of his motion for change of counsel

submitted to the state district court in the post-conviction matter demonstrates how

Attorney Brooks engaged in various misrepresentations and acted deficiently. *See* Dkt. 18

at 6-7. However, the Court specifically notified Petitioner that, if he desired to assert that

the *Martinez* exception applies to some of his claims, then he was required to specifically point to each fact that supports the exception for each of his defaulted claims. The Court counseled Petitioner: "It is unhelpful simply to ask the Court to review his motion for change of counsel and make Petitioner's arguments for him."[4] Dkt. 21, p. 12.

The Court instructed Petitioner to file a separate motion for application of *Martinez* to any of his defaulted ineffective assistance of trial counsel claims. The Court notified him specifically that he was required to provide: (1) the claim number and description of his claim from his habeas petition; (2) a statement of facts discussing the act or omission of trial counsel that harmed his defense; (3) a statement showing that the act or omission of trial counsel was the result of deficient performance rather than trial strategy; (4) a statement of facts showing that Petitioner's defense was prejudiced, in other words, *why* the trial outcome probably would have been different; and (5) an explanation why the cause of the default is his original post-conviction counsel's acts or omissions, rather than his post-conviction appellate counsel's decision not to include the claim in the appellate brief. After reviewing Petitioner's submissions, including the large number of exhibits he has submitted, the Court finds that he has failed to provide sufficient information in categories (2) through (5), above.

The Court also informed Petitioner that his motion must be accompanied by any evidence he has to support his claims, for example, affidavits of experts showing both the

---

[4] Even though the Court was not required to comb through Petitioner's submitted documents in search of evidence in support of his claims, the Court reviewed those documents nonetheless. (Dkt. 45.) There is simply nothing in any of the documents to support Petitioner's assertion that the reason Mr. Pintler did not raise the IATC claims to the state appellate court was, in fact, because Ms. Brooks did not adequately develop them in the state district court.

testimony they would have offered at trial and that they would have been able and willing to testify at Petitioner's trial. Dkt. 21 at 12-13.

Petitioner did submit what appear to be letters from purported experts Chris Conrad and Dr. Zachary Sparer, which state that marijuana was an appropriate treatment for Plaintiff's medical issues and that the amount of the drug possessed by Petitioner was consistent with personal medical use. *See* Dkt. 45. But such statements have nothing to do with the fact that Petitioner sold marijuana to a third party—which was clearly not for Petitioner's personal use. Though Mr. Conrad states that, in his opinion, providing cannabis to a third party for medical use "does not show intent to distribute for other than for personal medical use," there is no factual basis upon which Mr. Conrad's statement can be based and there is no showing that such an opinion is within the scope of his expertise. Petitioner himself acknowledged at trial that giving marijuana to another person "doesn't help my symptoms." (State's Lodging A-6 at 111.) Conrad also states that "providing marijuana to patients in need is consistent with compassionate medical treatment," but marijuana is not an authorized medical treatment in Idaho, and the state is not required to make it so. *See* Dkt. 45.

This evidence does *not* demonstrate how either Petitioner's trial counsel or initial post-conviction counsel was deficient. Critically, even though Petitioner has been out on parole for some time, he seems to have failed to contact his trial counsel, post-conviction counsel, and/or post-conviction appellate counsel to obtain information or documentation to understand their strategy and preparation. Even if he contacted them and they refused to cooperate, he could have notified the Court of that and sought a remedy months ago.

For the reasons that follow, the Court concludes that Petitioner has not borne the burden to show that *Martinez v. Ryan* should be applied to any of his claims. Petitioner has not shown that he made even minimal, let alone reasonable, efforts to obtain information from his former attorneys to support his claims. Habeas corpus is not a fishing expedition to discover new claims. Rather, because Petitioner has not made an effort to aid his own defense by doing those things within his reach, he is not entitled to discovery or further prolonged resolution of this case.

### 3. Discussion

#### A. *Failure to Show that Default Occurred at the Initial Post-Conviction Stage*

As noted directly above, because the state court record reflects that Petitioner's procedural default occurred at the *appellate* stage of his post-conviction proceedings, and *not* the initial stage, the Court notified Petitioner that he would have to particularly provide evidence showing that it was Ms. Brooks, rather than Mr. Pintler, who was responsible for the default. The Court does not reject Petitioner's premise—which is that the failure to develop claims at the initial stage can cause post-conviction appellate counsel to be unable to present them on appeal with any hope of winning[5]—but, rather, rejects Petitioner's position that he has shown that failure to develop the claims was the reason for the default, rather than that they were simply poor claims that were, as they should have been, winnowed out for the appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the

---

[5] *See, e.g., Lopez v. Ryan*, 678 F.3d 1131 (9th Cir. 2012).

importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

The Court agrees with Respondent that Petitioner has failed to provide sufficient facts to show that the claims were not winnowed out on appeal in favor of other claims with a better chance of prevailing. For example, Petitioner provides no affidavit from Mr. Pintler stating, that, but for the failure to develop these claims below, he would have asserted them on appeal. Neither does Petitioner provide anything from Ms. Brooks showing what she did to investigate Petitioner's claims and why she chose to pursue the particular representation she did in the post-conviction proceeding. *See Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation [of counsel's performance], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.").

## B. *Claims 4, 5, 6, 7, 8, 9, 14, 15*

Claims 4 through 9 all arise from the same complaint of Petitioner: he believes that trial counsel should have provided more evidence at trial about Petitioner's need for medical marijuana. Those claims are Claim 4: Failure to retain and use a medical expert to show the cause of Petitioner' medical issue; Claim 5: Failure to retain and use a medical expert to show the nature of Petitioner's medical condition; Claim 6: Failure to retain and use a medical expert to testify about the appropriateness of marijuana as a medical management tool for Petitioner's health issues; Claim 7: Failure to retain and use

a medical expert to testify about whether the evidence seized was consistent with personal medical management use; Claim 8: Wrongly counseling Petitioner to testify about the nature of his medical condition without having an expert support his testimony; Claim 9: Wrongly counseling Petitioner to testify about the appropriateness of marijuana as a medical management tool without having an expert support his testimony; Claim 14: Failure to utilize financial information to accurately show Petitioner's financial situation and to rebut the prosecutor's arguments; and Claim 15: Failure to obtain and utilize mitigating financial information regarding Petitioner, which information was in the possession of the prosecutor.[6]

After reviewing the record in this matter, including all of Petitioner's proposed expansions of the record, the Court agrees with Respondent that the medical necessity defense was not available to Petitioner on the facts of his case—no matter what factual development trial counsel would have done. Petitioner was charged with (1) delivery of a controlled substance, (2) possession of a controlled substance with intent to deliver, and (3) trafficking.

The law clearly is not on Petitioner's side. In *State v. Tadlock*, 34 P.3d 1096 (Idaho Ct. App. 2001), the Idaho Court of Appeals rejected Tadlock's assertion that the trial court should have given the jury a medical necessity defense in her case—regardless of whether she had presented enough evidence to show that she had a true medical necessity for marijuana as a result of her conditions of osteoporosis,

---

[6] Claims 14 and 15 are related to the medical necessity defense, because Petitioner tried to show at trial that he could not afford traditional health care expenses and had to turn to marijuana as an alternative.

hyperparathyroidism, depression, hip and knee pain, endometrial-hyperplasia, uterine

fibroid, and back pain. The court reasoned:

> [T]he necessity defense could have applied only to simple
> possession of marijuana, which was the lesser included
> offense on which the jury was instructed. The defense cannot
> logically apply to the charged offense of which Tadlock was
> found guilty, possession of marijuana with intent to deliver.
> Admittedly, Tadlock's evidence of medical need may have
> been relevant to controvert the mens rea element of intent to
> deliver by showing that Tadlock possessed the drug only for
> her own personal use. However, *medical necessity could not
> be a viable justification for possession with intent to deliver
> because Tadlock's own medical need for marijuana could not
> justify her possession of the drug with the intent to deliver it
> to others*. Only if the jury had first acquitted Tadlock of the
> intent to deliver charge and considered the lesser included
> offense of simple possession would the necessity instruction
> have been applicable. Because the jury found Tadlock guilty
> of possession with the intent to deliver, any error in the denial
> of her requested jury instruction on common law necessity
> was harmless.

*State v. Tadlock*, 34 P.3d 1096, 1098 (Idaho Ct. App. 2001) (emphasis added).

Petitioner has cited no case law that would have provided encouragement for his

counsel to do any more than she already had for his "medical necessity" defense. Based

on the foregoing, Petitioner's trial counsel could not have been deficient, and Petitioner

could not have been prejudiced, by the failure to present additional evidence supporting a

medical necessity defense. While this was the defense that counsel selected—given that

virtually no other defense existed on the facts she had to work with—that does not mean

that counsel was required to spend taxpayer funds on an expert, when no expert could

testify that Petitioner's own medical necessity *extended to possessing marijuana with*

*intent to deliver it to a third party for their use.* Rather, that was a legal question that could not be answered in Petitioner's favor.

Further, there was and is no case law definitively determining whether the medical necessity defense applied to Petitioner's second charge, trafficking. By analogy, it would appear that this defense to a charge of trafficking would meet the same demise as the charge of possession with intent to deliver—because both involve providing marijuana to a third party, rather than for possessing it for self-use. Therefore, the Court concludes that trial counsel was not deficient in failing to pursue additional evidence on medical necessity, and Petitioner was not prejudiced by the failure to pursue this avenue at trial.

Alternatively, because the Idaho appellate courts have not spoken on the trafficking charge, this claim is novel enough that counsel is given the strategic flexibility not to have chosen it. "Counsel's failure to raise [a] novel argument ... does not render h[er] performance constitutionally ineffective." *United States v. Fillingame*, 141 F.3d 1180 (9th Cir. 1998) (unpublished); *see also United States v. Zamudio*, 787 F.3d 961, 966 (9th Cir. 2015) (stating that, under *Strickland*, counsel does not perform did not perform deficiently by "failing to make legal arguments that were not ... established at the time"); *Pierce v. United States*, 686 F.3d 529, 534 (8th Cir. 2012) (no ineffectiveness where there was a "paucity of case law describing th[e] precise situation"); *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("[T]he rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized.") (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 17.4, at 502 (4th ed. 1996)).

For the foregoing reasons, the Court concludes that Petitioner has failed to show that his trial counsel was deficient, or that his case was prejudiced, by counsel's failure to pursue the medical necessity defense any further than she did at trial. For the same reasons, post-conviction counsel was not deficient, and the post-conviction action was not prejudiced, by initial post-conviction counsel's failure to further develop the ineffective assistance of trial counsel claims corresponding to Claims 4, 5, 6, 7, 8, 9, 14 and 15. Therefore, these claims are not substantial and no cause for their default has been shown. The *Martinez v. Ryan* exception does not apply.[7]

### C. *Claims 10 and 11: Ann Nord Evidence*

Claims 10 and 11 are related to evidence surrounding expert Ann Nord, an Idaho State Police forensic scientist. Claim 10 is that trial counsel failed to notify Petitioner that the prosecutor was going to conduct Nord's deposition; Petitioner claims that this omission misled him "about important evidentiary issues and events." Dkt. 3, p. 18. Claim 11 has several subparts: (1) that trial counsel failed to disclose the truth to Petitioner about the lab test results and deposition testimony, (2) that trial counsel gave misleading advice about evidentiary issues and strategic decisions, and (3) that trial counsel deprived Petitioner of an opportunity to cross-examine Nord.

---

[7] The Court notes that Claim 1, which is properly exhausted, shares the same underlying medical necessity theory as these ineffective assistance of counsel claims. While it appears to the Court that Claim 1 is also subject to denial, the Court will permit the parties to proceed to full briefing on the claim in the next phase of this litigation. Should the Court decide that habeas corpus relief on that claim is warranted, then it may also revisit the companion ineffective assistance claims for consistency's sake, though, practically speaking, that would not be necessary, as one successful claim warrants habeas relief.

The record is devoid of any information about Nord's knowledge of the facts in this case. Petitioner does not demonstrate that he tried to obtain this information from trial counsel for use in the post-conviction proceedings or in habeas corpus proceedings and was unable to do so. Nord was not called as a trial witness, and Petitioner has not disclosed whether his trial counsel attended Nord's deposition, what the content of the deposition was, or how the deposition testimony would have been helpful to his case. Because he has had more than ample opportunity to investigate this claim with several of his past counsel, and yet offers nothing but speculation about Nord, the Court concludes that Petitioner has failed to show that trial counsel was deficient, that post-conviction counsel was deficient, or that either his trial defense or his post-conviction case were prejudiced.

Likewise, Petitioner does not reveal what the "truth" about Nord's lab tests is or how it would have aided his defense—unless he is referring to his statement that Detective Paull mistook Petitioner's crop of sweet basil for marijuana. *See* Dkt. 44, p. 15. Petitioner complains that trial counsel never used the lab report or challenged the lab report to aid his defense at trial: in his Affidavit, he says that trial counsel conceded in her response to his Bar Complaint that "the lab report … was an important part of the State's evidence against him." Trial counsel did write those words, but it was in the context of stating that she did, in fact, review the report with Petitioner. (State's Lodging E-1 at 71.)

Further, trial counsel stated that Petitioner had access to the lab report as it was given to him by his former counsel. (*Id.*) Regardless of whether Petitioner did previously have access to the lab report or not, he has had ample opportunity to obtain the report at

this juncture and to show how trial counsel should have used it to his advantage at trial. He has not done so. Petitioner has also not shown that any sweet basil constituted more than a negligible portion of the plants and other items seized by police. Therefore, this allegation of deficient performance of trial and post-conviction counsel is unsupported.

Petitioner also asserts that he had a "right to cross-examine" Nord. However, because Nord did not testify at trial, no such "right" exists. This claim is also without any factual support and does not amount to ineffective assistance of any of Petitioner's counsel.

### D. *Claim 13: Impeachment of Confidential Informant*

Claim 13 is that trial counsel failed to impeach the credibility of the confidential informant by neglecting to show the jury evidence that the confidential informant's sworn statements were inconsistent with her recorded statements to police and with her recorded conversations with Petitioner. Rather than providing any specific discrepancies, Petitioner desires that the Court allow him to engage in discovery.

Petitioner admits that he received the audio-recording of one or more of the conversations between him and the confidential informant from an attorney in 2017. Though he claims that these copies of the recordings have been edited or falsified, the Court has already explained that there is no evidence of any such alteration. Petitioner has failed to pinpoint specific discrepancies, let alone discrepancies of significance, between the audio-recordings he has submitted to the Court and the confidential informant's testimony at trial. Had Petitioner presented *something* in support of his

claims, he might have gained the opportunity to conduct discovery. However, Petitioner comes empty-handed, despite his years of efforts to overturn his conviction.

No further discovery is warranted. Petitioner has failed to show how trial counsel was deficient, or how the alleged deficiencies prejudiced his defense. Neither trial counsel nor post-conviction counsel were ineffective for their failure to pursue this claim for Petitioner.

### E. *Claim 16: General Failures of Counsel in Pursuing Defense*

Claim 16 focuses on three general failures of trial counsel to perform in a manner expected by Petitioner, including the failure to (a) discuss Beavers' pre-arrest circumstances with him in a meaningful way, (b) investigate Beavers' concerns, and (c) allow Beavers to participate in the decision-making process with full disclosure of the evidence. Petitioner points to his own Affidavit and his Bar Complaint to support this claim.

As noted before, in the Court's prior Order, the Court explained to Petitioner the importance of bringing specific facts in support of his claims to the Court's attention, and that he could not simply point the Court in the direction of the facts and have the Court sniff them out. Here, Petitioner has not fleshed out these vague allegations with any facts. Therefore, he has not shown how trial counsel was deficient or how his case was prejudiced by her failures in these areas. Neither has he shown why post-conviction counsel should have pursued additional factual development on post-conviction review.

### 4. Conclusion

Petitioner has not met his burden to show that the *Martinez v. Ryan* exception should be applied to excuse the default of any of his ineffective assistance of trial counsel claims. The Court is now ready to take up the merits of the remaining claims. Petitioner shall have an additional time period to provide a reply to Respondent's Response and Brief in Support of Dismissal. Petitioner shall not brief any procedurally-defaulted claim but focus only on those claims before the Court on the merits—Claims 1 and 12.

## ORDER

### IT IS ORDERED:

1. Petitioner's Motion to Reconsider Appointment of Counsel (Dkt. 35) is DENIED.

2. Petitioner's Motion for Discovery (Dkt. 37) is DENIED.

3. Petitioner's Motion to Expand the Record (Dkt. 45) is GRANTED, only for procedural default purposes.

4. Petitioner's and Respondent's Motions for Extensions of Time (Dkts. 36, 47, 48, 51, 52) are GRANTED.

5. Petitioner's Motion to Apply the *Martinez v. Ryan* Exception (Dkt. 44) is DENIED.

6. Petitioner's Motion for Status (Dkt. 57) is GRANTED with the entry of this Order.

7.  Petitioner may file a reply to the merits discussion on the remaining claims (1 and 12) found in Respondent's Response and Brief in Support of Dismissal (Dkt. 28) within **30 days** after entry of this Order.

8.  Respondent may file a sur-reply within **14 days** after Petitioner's reply.

9.  Nothing further shall be filed thereafter until the Court addresses the merits of the remaining claims.

DATED: September 28, 2018

David C. Nye
U.S. District Court Judge